UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **INGRAM BARGE COMPANY, LLC,** | ) |
| Plaintiff, | ) ) ) |
| V. | )  CASE NO. _____ |
| **LOUIS DREYFUS COMPANY, LLC,** | ) ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Ingram Barge Company LLC ("Ingram"), for its Complaint against defendant, Louis Dreyfus Company LLC f/k/a Louis Dreyfus Commodities LLC ("LDC")*,* states as follows:

## PARTIES

**1.**

Ingram is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee. At all relevant times Ingram provided marine transportation services to LDC.

**2.**

LDC, upon information and belief, is a foreign limited liability company incorporated under the laws of the State of Delaware, which has its principal place of business in the State of Connecticut.

## JURISDICTION

**3.**

This is a case of admiralty and maritime jurisdiction, giving this Court subject matter jurisdiction over this action pursuant to 28 U.S.C. §1333.

**4.**

This is an admiralty and maritime claim within the meaning of Rule 9(h).

**5.**

Ingram seeks, in part, a declaratory judgment pursuant to 28 U.S.C. §2201 of a question of actual controversy between the parties as more fully described below.

**6.**

The contract at issue herein contains a forum selection clause designating the United States District Court for the Middle District of Tennessee as the exclusive forum for disputes arising from the contract and contains a waiver of objections as to personal jurisdiction and venue.

## FACTS

**7.**

As set forth below, between approximately May 21, 2019 and July 15, 2019, LDC purchased grain from various companies ("Seller(s)") under terms which required the Sellers to arrange for marine transportation of the grain from facilities designated by the Seller to a delivery point on the Lower Mississippi River.

**8.**

Sellers, pursuant to their obligation under their contracts with LDC ("Sale Agreement"), entered into private contracts of carriage with Ingram for marine transportation of the grain to a point designated by LDC.

**9.**

The contracts for marine transportation of grain are maritime contracts.

**10.**

The contracts between Sellers and Ingram took the form of a standard Ingram bill of lading, which expressly incorporated the "Grain Transportation Terms" found on Ingram's publicly accessible website and additionally available by requesting the terms from Ingram. The bill of lading contains several fields, including (1) "Transportation Ordered By," which identifies the Seller; (2) "Consigned To," which identifies the Seller's first consignee of the cargo; and (3) "Notify," which identifies the ultimate consignee and receiver of the cargo. At times, the "Notify" field identifies multiple companies. In such cases, the first name listed is the ultimate consignee, receiver, and owner of the cargo. The other names listed, typically after "A/C," meaning "on account of," are companies in the consignment chain, but who are not the ultimate consignee, receiver, and owner of the cargo.

**11.**

Specifically, Ingram's bill of lading states: "It is mutually agreed, as to each carrier of this property over all or any portion of said route, and to each party at any time interested in all or any part, of said property, that every service to be performed hereunder is (or will be deemed) subject to Carrier's Grain Transportation Terms which are posted on Carrier's webpage at ***www.ingrambarge.com/graintransportationterms.pdf***, paper copies and previous versions of Carrier's Grain Transportation Terms are also available upon request at ***LegalDept@ingrambarge.com***; any Consignee hereto is (and will be deemed) bound by Carrier's Grain Transportation Terms."

**12.**

At all relevant times, the Grain Transportation Terms attached as Exhibit A were in force and effect. Ingram alleges and incorporates all of the terms contained in Exhibit A into this Complaint and its claim against LDC.

**13.**

LDC also had constructive knowledge of the Grain Transportation Terms because LDC received and accepted Ingram's bills of lading, which expressly incorporated the Grain Transportation Terms.

**14.**

The Grain Transportation Terms specify that the Seller (who orders the marine transportation from Ingram) and LDC (the grain purchaser/consignee) are jointly and severally obligated to fulfill all of the contractual obligations of the "Shipper," as that term is used in the contract: "As used in the Contract, "Shipper" means the entity ordering the cargo transportation and the owners of the cargo (including any consignee(s)), individually and collectively, and the Shipper will be jointly and severally liable to Carrier for all obligations set forth in these Grain Transportation Terms and Carrier's Bill of Lading."

**15.**

The Grain Transportation Terms also specify that Seller and LDC, as the "Shipper," are jointly and severally responsible for the charges for shifting, fleeting, and wharfage services performed after the barge containing the grain is "placed" or "constructively placed" at the destination designated in the applicable bill of lading:

> 11. Accessorial Charges: Carrier is not liable for the following accessorial charges: ballasting, excessive cleaning, demurrage, dockage, drayage, elevation, loading or unloading of cargo, opening or closing of barge hatch covers, removal

or replacement of barge covers, sheddage, stacking or restacking of barge covers, switching tollage, wharfage, shifting or fleeting at destination fleet, or any other terminal expense at either origin or destination. All of the foregoing charges are for Shipper's sole account.

12. Shifting: Freight rates include one shift of the barge into and one shift out of the loading facilities at origin (i.e. from fleet to dock and dock to fleet). Any charges related to additional shifting or handling of the barge at origin to accommodate Shipper's (or the loading facility's) loading or other requirements will be for Shipper's sole account. Upon placement of the barge (pursuant to the "Placement" Section herein) at the destination fleet or facility, whichever occurs first, all shifting, fleeting, and any other barge handling charges will be for the sole account of Shipper; Shipper shall timely direct-pay whichever entity(ies) provide such post-placement shifting, fleeting and any other barge handling charges. When the barge is shifted post-arrival at destination, Shipper assumes full responsibility for the safety of the barge and its cargo during such shift or preparation therefor.

…

14. Placement: Actual placement occurs at origin when a barge is placed for loading at the fleet or facility specified by Shipper or at a nearby fleet selected by Carrier, whichever occurs first. Actual placement occurs at destination when Carrier's boat arrives in the vicinity of the destination fleet or facility such that Shipper (or its other contractor) can shift it from Carrier's boat into the destination fleet or facility. Except as otherwise provided for herein, if actual placement is hindered by any cause over which Carrier has no control, Carrier may constructively place the affected barge(s). Constructive placement consists of placing a barge at a point of Carrier's choice near the specified origin or destination.

**16.**

As set forth below, LDC did not pay the third-party marine service providers for shifting, fleeting, and wharfage services provided to the barges carrying its cargo after they were placed or constructively placed by Ingram pursuant to the Grain Transportation Terms. As such, LDC is in breach of contract.

**17.**

To avoid the assertion of maritime liens on its barges, Ingram paid the following invoices of third-party marine service providers for shifting, fleeting, and wharfage services provided to the

barges carrying its cargo after they were placed or constructively placed by Ingram pursuant to the Grain Transportation Terms. As such, LDC was unjustly enriched because Ingram paid amounts that were owed by LDC under the Grain Transportation Terms.

**Carriage Under Bill of Lading No. ING19-00481**

18.

On May 9, 2019, Ingram entered into bill of lading no. ING19-00481 with COFCO International Grains US, LLC ("COFCO") designating COFCO as the consignee and Port Allen, Louisiana as the destination. A copy of bill of lading no. ING19-00481 and the associated weight certificate are attached as Exhibit B. LDC became the consignee prior to discharge of the cargo from the barge.

19.

Thereafter, the grain cargo shipped under bill of lading no. ING19-00481. In total, 54,280.67 bushels of yellow soybeans were loaded onto barge IN176105.

20.

On July 2, 2019, Ingram placed barge IN176105 at Baton Rouge CCI Fleet (LMR 228).

21.

Thereafter, from July 2, 2019, through July 3, 2019, third-party marine service provider Cargo Carriers, Inc. provided shifting, fleeting, and wharfage services to barge IN176105 and LDC's cargo in the amount of $2,436.60, as described on the invoice attached as Exhibit C.

22.

On October 22, 2019, Ingram rebilled LDC for the shifting, fleeting and wharfage charges in Exhibit C, as evidenced by Exhibit D; but LDC did not pay the rebill invoice despite its contractual obligation to do so pursuant to the Grain Transportation Terms.

**23.**

On October 29, 2019, Ingram paid Exhibit C, as evidenced by the accounting record attached as Exhibit E.

**24.**

As set forth above, in total Ingram paid $2,436.60 in charges on Exhibit C which were LDC's obligation under the Grain Transportation Terms.

## Carriage Under Bill of Lading No. ING19-00480

**25.**

On May 9, 2019, Ingram entered into bill of lading no. ING19-00480 with COFCO International Grains US, LLC ("COFCO") designating COFCO as the consignee and Port Allen, Louisiana as the destination. A copy of bill of lading no. ING19-00480 and the associated weight certificate are attached as Exhibit F. Upon information and belief, LDC became the consignee prior to discharge of the cargo from the barge.

**26.**

Thereafter, the grain cargo shipped under bill of lading no. ING19-00480. In total, 50,487 bushels of soybeans were loaded onto barge IN135429.

**27.**

On July 2, 2019, Ingram placed barge IN135429 at Baton Rouge CCI Fleet (LMR 228).

**28.**

Thereafter, from July 2, 2019, through July 3, 2019, third-party marine service provider Cargo Carriers, Inc. provided shifting, fleeting and wharfage services to barge IN135429 and LDC's cargo in the amount of $2,436.60, as described on the invoice attached as Exhibit G.

**29.**

On October 22, 2019, Ingram rebilled LDC for the shifting, fleeting and wharfage charges in Exhibit G, as evidenced by Exhibit H; but LDC did not pay the rebill invoice despite its contractual obligation to do so pursuant to the Grain Transportation Terms.

**30.**

On October 29, 2019, Ingram paid Exhibit G, as evidenced by the accounting record attached as Exhibit I.

**31.**

As set forth above, in total Ingram paid $2,436.60 in charges on Exhibit G which were LDC's obligation under the Grain Transportation Terms.

**Carriage Under Bill of Lading No. ING19-00696**

**32.**

On June 14, 2019, Ingram entered into bill of lading no. ING19-00696 with Green Plains Trade Group, LLC ("Green Plains") designating Green Plains as the consignee and Darrow, Louisiana as the destination. A copy of bill of lading no. ING19-00696 is attached as Exhibit J. LDC became the consignee prior to discharge of the cargo from the barge.

**33.**

Thereafter, the grain cargo shipped under bill of lading no. ING19-00696. In total, 1,283,048 tons of distillers dried grain were loaded onto barge ING5878.

**34.**

On June 26, 2019, Ingram placed barge ING5878 at Cooper Darrow Fleet (LMR 176).

**35.**

Thereafter, from June 26, 2019, to August 15, 2019, third-party marine service provider Cooper Consolidated LLC provided shifting, fleeting and wharfage services to barge ING5878 and LDC's cargo in the amount of $5,295.25, as described on the invoices attached as Exhibits K, L and M.

**36.**

On August 9, 2019 and October 11, 2019, Ingram rebilled LDC for a portion of the shifting, fleeting and wharfage charges in Exhibits K, L and M in the amount of $4,520.25, as evidenced by Exhibits N, O and P; but LDC did not pay the rebill invoice despite its contractual obligation to do so pursuant to the Grain Transportation Terms.

**37.**

On August 6, 2019, September 10, 2019, and October 1, 2019, Ingram paid Exhibits K, L and M, as evidenced by the accounting records attached as Exhibit Q.

**38.**

As set forth above, in total Ingram paid $4,520.25 in charges on Exhibits K, L and M which were LDC's obligation under the Grain Transportation Terms.

**Carriage Under Bill of Lading No. ING19-00718**

**39.**

On June 20, 2019, Ingram entered into bill of lading no. ING19-00718 with Green Plains Trade Group, LLC ("Green Plains") designating Green Plains as the consignee and the destination of Darrow, LA attached as Exhibit R. LDC became the consignee prior to discharge of the cargo from the barge.

**40.**

Thereafter, the grain cargo shipped under bill of lading no. ING19-00718. In total, 1,498,658 tons of distillers dried grain was loaded onto barge IN067501.

**41.**

On June 29, 2019, Ingram placed barge IN067501 at Cooper Darrow Fleet (LMR 176).

**42.**

Thereafter, from June 29, 2019, to August 25, 2019, third-party marine service provider Cooper Consolidated, LLC provided shifting, fleeting and wharfage services to barge IN067501 and LDC's cargo in the amount of $5,680.25 as described on the invoices attached as Exhibits S, T and U.

**43.**

On August 9, 2019 and October 11, 2019, Ingram rebilled LDC for a portion of the shifting, fleeting and wharfage charges in Exhibits S, T and U in the amount of $4,905.25, as evidenced by Exhibits V, W and X; but LDC did not pay the rebill invoice despite its contractual obligation to do so pursuant to the Grain Transportation Terms.

**44.**

On August 6, 2019, September 10, 2019, and October 8, 2019, Ingram paid Exhibits S, T and U, as evidenced by the accounting record attached as Exhibit Y.

**45.**

As set forth above, in total Ingram paid $4,905.25 in charges on Exhibits S, T and U which were LDC's obligation under the Grain Transportation Terms.

**46.**

As set forth above in Paragraphs 1 thought 45, in total Ingram paid $14,298.70 in charges which were LDC's obligation under the Grain Transportation Terms, as summarized in the table below. Ingram continues to suffer losses related to LDC's failure to comply with its contractual obligations under the Grain Transportation Terms and Ingram seeks to recover all such losses proven at trial regarding this failure.

| DATE | BILL OF LADING | BARGE | CHARGE |
|---|---|---|---|
| May 9, 2019 | ING19-00481 | IN176105 | $2,436.60 |
| May 9, 2019 | ING19-00480 | IN135429 | $2,436.60 |
| June 14, 2019 | ING19-00696 | ING5878 | $4,520.25 |
| June 20, 2019 | ING19-00718 | IN067501 | $4,905.25 |
| TOTAL | | | $14,298.70 |

**47.**

LDC has previously paid other Ingram invoices for barge transportation charges pursuant to the bills of lading and incorporated Grain Transportation Terms, thus waiving any argument that it is not bound by those terms. For example, LDC paid demurrage charges for barge IN067501 that Ingram invoiced on August 26, 2019, as shown on Exhibit Z.

**COUNT ONE: BREACH OF CONTRACT**

**48**.

Ingram repeats, re-alleges, and incorporates as if fully set forth herein Paragraphs 1-46 above.

**49.**

LDC's failure to pay the third-party marine service provider invoices described herein and identified as Exhibits D, H, N, O, P, V, W and X (the "Rebill Invoices"), constitutes a breach of contract and therefore LDC is liable to Ingram in the amount of $14,298.70 and any additional

amounts proved at trial of this matter in contractual damages, including contractual interest, pre-judgment interest, attorney's fees and costs.

### **COUNT TWO: UNJUST ENRICHMENT/QUANTUM MERUIT**
### **(In the alternative to COUNT ONE: BREACH OF CONTRACT)**

**50.**

Ingram repeats, re-alleges, and incorporates as if fully set forth herein Paragraphs 1-49 above.

**51.**

LDC was obligated to pay the Rebill Invoices and has benefitted from the shifting, fleeting, and wharf age services provided to its cargo by the third-party service providers as identified in the Rebill Invoices. Ingram has suffered impoverishment due to LDC's non-payment of the Rebill Invoices and there is a connection between the enrichment and resulting impoverishment due to the shifting, fleeting, and wharfage services having been provided with agreed-to compensation which has not been paid. LDC has no justification for its refusal to pay for the services, and no other remedy at law is available for the recovery of the valid and reasonable sums due Ingram. Therefore, LDC is liable to Ingram in the amount of $14,298.70 and any additional amounts proved at trial of this matter in damages, including pre-judgment interest, attorney's fees and costs

### **COUNT THREE: DECLARATORY JUDGMENT**

**52.**

Ingram repeats, re-alleges, and incorporates as if fully set forth herein Paragraphs 1-51 above.

**53.**

Ingram seeks a judgment declaring that bills of lading for cargos owned by LDC and that incorporate the Grain Transportation Terms constitute a valid and enforceable contract between Ingram and LDC, pursuant to which LDC is obligated to pay the third-party service provider charges for shifting, fleeting, and wharfage services provided to the barges carrying such cargos after they were placed or constructively placed.

**54.**

LDC denies that the bills of lading and incorporated Grain Transportation Terms create a contractual obligation for it to pay the third-party service provider charges for shifting, fleeting, and wharfage services provided to the barges carrying its cargos after they were placed or constructively placed.

**55.**

An actual controversy exists between the parties as to whether the bills of lading and incorporated Grain Transportation Terms constitute a valid and enforceable contract between the parties. Such controversy can be determined by a judgment of this Court.

**56.**

Plaintiff, Ingram, reserves the right to supplement and amend this Complaint as necessary and appropriate through the discovery of additional information relevant hereto.

WHEREFORE, plaintiff, Ingram Barge Company LLC, prays that defendant Louis Dreyfus Company LLC f/k/a Louis Dreyfus Commodities LLC be served with this Complaint and that, after due proceedings are had there be judgment in favor of Plaintiff against Defendant for all expenses, damages and losses sustained as a result of the dispute described above, that a declaratory judgment be issued declaring the bills of lading and Grain Transportation Terms

constitute a valid and enforceable contract between the parties, and for attorney's fees, pre-judgment interest and costs, as well as all other relief to which Ingram may be entitled under law, contract, or equity.

>Respectfully submitted,
>
>*/s/ W. Brantley Phillips, Jr.*
>W. Brantley Phillips, Jr.
>**BASS BERRY & SIMS PLC**
>150 Third Avenue South, Ste. 2800
>Nashville, TN 37201
>(615) 742-6200
>bphillips@bassberry.com
>
>David L. Reisman *(PHV forthcoming)*
>Raymond T. Waid *(PHV forthcoming)*
>Trinity Morale *(PHV forthcoming)*
>**LISKOW & LEWIS**
>701 Poydras Street, Suite 5000
>New Orleans, LA 70139-5099
>(504) 581-7979
>dreisman@liskow.com
>rwaid@liskow.com
>tmorale@liskow.com
>
>***Attorneys for Ingram Barge Company LLC***